RENE L. VALLADARES
Federal Public Defender
State Bar No. 11479
REBECCA LEVY
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Rebecca_Levy@fd.org

Attorney for Dustin W. Holden

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br> v.<br><br>DUSTIN W. HOLDEN,<br><br>   Defendant. | Case No. 2:17-cr-00015-RFB<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

CERTIFICATION: This Sentencing Memorandum is timely filed in accordance with the Minutes of Proceedings (ECF No. 40).

  The Defendant, Dustin Holden, by and through his counsel, Rebecca Levy, Assistant Public Defender, and hereby submits this Sentencing Memorandum for the Court's consideration in fashioning a sentence. Mr. Holden reserves the right to supplement this memorandum with additional authorities or information, as the Court may permit, at or before the revocation hearing presently scheduled for April 5, 2018 at 3:00 p.m.

  DATED this March 16, 2018

              RENE L. VALLADARES
              Federal Public Defender

            By: */s/ Rebecca Levy*
              REBECCA LEVY
              Assistant Federal Public Defender
              Attorney Dustin Holden

## ARGUMENT

A sentence of 68-days is a just and proper sentence pursuant to the Supreme Court's mandate in *United States v. Booker*, 543 U.S. 220, 245, 259-60 (2005). In *Booker*, the Supreme Court found that sentencing courts for new criminal offenses must consider the factors in 18 U.S.C. § 3553(a) in addition to the Guidelines range, which is no longer mandatory but rather merely advisory. *Id.*; 18 U.S.C. § 3553(a). Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary:"

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

18 U.S.C. § 3553(a) further directs sentencing courts to consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense, among other factors.

2

*Booker* makes it clear that courts may no longer uncritically apply the Guidelines without analyzing the above section 3553(a) factors when sentencing defendants to new criminal violations. 543 U.S. at 259-60. Significantly, many of the section 3553(a) factors are the type of factors that the Guidelines either reject or completely ignore. For example, under 18 U.S.C. § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant." However, under the Guidelines, courts are generally prohibited or restricted from considering many of these characteristics. Thus, as Judge Wardlaw of the Ninth Circuit found in *United States v. Ameline*, "District courts now . . . have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant,' such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities." 409 F.3d 1073, 1093 (9th Cir. 2005) (en banc) (Wardlaw, J., concurring in part and dissenting in part).

With respect to sentencing defendants for violating the terms of their supervised release, this Court *shall* consider some of these section 3553(a) factors, but it *must* disregard other factors according to 18 U.S.C. § 3583(e). Importantly, section 3583(e) limits this Court's discretion when sentencing defendants, like Mr. Holden, for supervised release violations. According to section 3583(e), this Court can only consider eight out of the ten section 3553(a) factors when sentencing a defendant for violating supervision. *See* 18 U.S.C. § 3583(e) (expressly listing that the court may consider "section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)"). Thus, pursuant to section 3583(e), this Court must

consider "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), as it would when sentencing a defendant for a new substantive offense. But this Court cannot consider section 3553(a)(2)(A) – the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" – in sentencing Mr. Holden for violating his supervised release because this subsection is missing from section 3583(e)'s list of allowable section 3553(a) sentencing factors.

Accordingly, the Ninth Circuit in *United States v. Miqbel*, 444 F.3d 1173, 1183 (9th Cir. 2006), vacated and remanded a defendant's sentence for violating supervised release when it appeared that the sentencing court based its sentencing decision "in part on an impressible factor" to "reflect the seriousness of the violations, to promote respect for the law, [and] to provide just punishment." In *Miqbel*, the defendant was serving a three-year term of supervised release. 444 F.3d at 1174. After finding a violation of the terms of Miqbel's supervision for using methamphetamine, the district court upwardly departed from Miqbel's Guidelines; sentencing him to twelve months of imprisonment. *Id.* at 1175.

On appeal, the Ninth Circuit held that the district court failed to provide "specific reasons for imposing" its sentence as required by section 3553(c)(2). 444 F.3d at 1181. Even though the district court's reasoning was not specific enough for section 3553(c)(2)'s requirements, the Ninth Circuit nevertheless found that it was "clear from reviewing the entire colloquy at the bail hearing both that a primary basis for Miqbel's sentencing was punishment that was intended to promote respect for the law." *Id.* at 1183, n.21 ("Because of the district court's reliance on an impermissible sentencing factor and the failure of the record to record to

4

show that it considered the appropriate § 3583(e) factors, we would likely be required to vacate and remand for resentencing if for no other reason than to permit the judge to impose a sentence on the basis of the proper factors.").

The Ninth Circuit found that it was "improper" for a sentencing judge to consider section 3553(a)(2)(A)'s factors – promoting respect for the law and providing just punishment – because "Congress deliberately omitted [these factors] from the list applicable to revocation sentencing" in section 3583(e). 444 F.3d at 1181-82. Consequently, this Court may not *punish* Mr. Holden in an to attempt to promote respect for the law with a supervised release sentence. *Miqbel*, 444 F.3d at 1181-83. As *Miqbel* stressed, "at a revocation sentencing, a court may appropriately sanction a violator for his 'breach of trust,' but may not punish him for the criminal conduct underlying the revocation." *Id.* at 1182; *see also United States v. Simtob*, 485 F.3d 1058, 1063-64 (9th Cir. 2007) (vacating and remanding a 3-year statutory maximum sentenced for a supervised release violation for the sentencing court to comply with "the permissible considerations set forth in *Miqbel*" when it was unclear whether the sentencing court "placed special emphasis on the seriousness of [defendant's] new criminal conduct as the primary consideration for the sentence").

**STATEMENT OF FACTS**

Dustin Holden (hereinafter "Mr. Holden") was sentenced on July 27, 2017, to five years of probation with many conditions of supervision to include intermittent custody. Docket #18. Mr. Holden was ordered to being the intermittent confinement starting with two weekends in August, 2017 and three weekends every month thereafter. *Id.* On September 21, 2017, Mr. Holden signed a Waiver of Hearing to Modify Conditions of Probation. In this waiver, Mr.

Holden agreed to serve 68 days of consecutive custody in lieu of the intermittent custody. All other conditions of probation would remain. On October 6, 2017, Mr. Holden was arrested in Georgia (based upon a violation of probation). Docket #22. On October 26, 2017, Mr. Holden appeared out of custody in the District of Nevada for the initial appearance on a violation of probation. Docket #28. On January 23, 2018, Mr. Holden made another appearance in the District of Nevada, this time for the actual hearing on the revocation of probation. Docket #40. Counsel requested a continuance of the hearing and at that time the Court modified the conditions of Mr. Holden's probation. Docket #41. The additional conditions of probation include a restriction to his residence with location monitoring. *Id.* Mr. Holden is allowed out of his residence only for certain activities such as employment. *Id.* Mr. Holden's next hearing date is April 5, 2018. Docket #40.

### After Sentencing, Changes in Mr. Holden's Family Circumstances Made Compliance with Intermittent Custody Challenging

At the time of his sentencing, Mr. Holden was married and raising his child together with his wife. Mr. Holden did not have custody considerations to worry about at sentencing. That has changed. Unfortunately, his wife has significant mental health issues that became problematic after sentencing. Mr. Holden and his wife split up, but it was not amicable.

Things became more difficult when Mr. Holden's ex-wife started using his daughter as a pawn. As an example, Mr. Holden was supposed to check into custody starting on Friday evenings. The drive to the jail was about an hour or more, especially in Friday Atlanta traffic. Mr. Holden would have custody of his daughter on Friday's with the understanding his ex-wife would take over in time for him to check in to the facility.

On September 8, 2017, Mr. Holden has this understanding with his ex-wife. *See* Exhibit A, text messages from Mr. Holden's ex-wife on September 8, 2017. Mr. Holden's ex-wife never came to pick up his daughter, however, which prevented him from checking into custody.

6

Since Mr. Holden had no one to care for his daughter, he was placed in a very difficult situation. Mr. Holden could either abandon his four-year old and report to custody or skip custody and take care of his daughter. This occurred on several occasions in September making reporting for custody extremely difficult. Mr. Holden had planned on doing all five weekends in jail in September, but the custody situation did not allow this to happen.

As the Court is well aware from Mr. Holden's Pre-Sentence Report, he has no close family he can rely upon to take care of his daughter if he is in custody. Mr. Holden has no contact with his mother or step-siblings and was raised in an extremely abusive household. While he currently lives with his grandmother, she is not physically able to take care of his daughter.

When Mr. Holden and his Probation Officer tried to sort out the custody situation, the idea of serving his entire sentence consecutively was discussed. Mr. Holden fully agreed to serve his entire custody term consecutively. While this possibility was pending, Mr. Holden was not serving the weekends in custody as he was awaiting a possible modification of his sentence. After Mr. Holden was arrested in this case, he also did not serve weekends in custody as advance notice is required from probation to the jail to set up intermittent custody.

**Mr. Holden Has Been Compliant with All Other Conditions of Supervision**

Since Mr. Holden's appearance on January 23, 2018, he has had additional conditions of release. Docket #40. These conditions include home confinement with location monitoring which includes a restriction to his residence except for very limited circumstances. Docket #41. For the last two months, Mr. Holden has abided by these strict requirements.

Mr. Holden is currently living with his grandmother which will be a good place for him to raise his daughter. This is also a good arrangement for Mr. Holden's grandmother, as she has a heart condition and is no longer able to many of her daily activities without assistance.

Probation Officer Walter Cochran, out of the District of Georgia, has stated that Mr. Holden hasn't had any problems (aside from the petition) and has been compliant with all conditions of release. Mr. Holden has weekly phone contact with Officer Cochran and monthly visits. Contact with Officer Cochran makes it apparent that Mr. Holden is a good candidate for continued supervision with a positive attitude while on probation. Mr. Holden is amenable to working with the probation office and Officer Cochran in the future.

Mr. Holden is also planning on participating in a week-long community service project planned at Cloudland Canyon State Park in Rising Fawn Georgia in October. This will allow him to complete many hours of his community service. Mr. Holden has also completed a PowerPoint presentation he plans to use to speak to high school students in the future. This PowerPoint will be to encourage students to avoid making the same mistake he made in the past.

**Mr. Holden has Maintained Steady Full-Time Employment**

Mr. Holden is currently working Monday through Saturday in a full-time capacity. Part of that employment is doing contract work for Factory Glass Direct, LLC. This is a company located in Georgia that Mr. Holden helps to maintain their website and internal management team. Mr. Holden also owns BEVHOLDEN, LLC. As part of this company, he is doing contract work for EY studios, an e-commerce company also located in Georgia. In addition, Mr. Holden is doing contract work for Cave Consulting. This is a small company which only has one developer, Mr. Holden. This work involves software development, web security knowledge and any other web assistance the company may need.

Mr. Holden is also a partner and lead developer for AMZAble. Mr. Holden develops tools and products for an Amazon based business. This currently supports almost 100 businesses whose main market is Amazon. These businesses depend upon the software and services that Mr. Holden's company provides. This is a very small company that is mostly run

by Mr. Holden and would likely fall if Mr. Holden was to be unavailable to run the company for a long period of time.

### Mr. Holden is Currently Going through a Divorce and Seeking Custody of his Young Daughter

Since sentencing in his case, Mr. Holden has filed for divorce and is trying to get a court date for an emergency custody hearing. The reason for this hearing is that Mr. Holden has serious concerns that his ex-wife is neglecting his four-year old daughter. These concerns have been escalating in recent weeks.

In December, Mr. Holden's ex-wife disclosed that his daughter had broken her arm from a "fall." There wasn't much information given regarding this event and Mr. Holden became concerned. Originally, Mr. Holden's ex-wife didn't take his daughter to the hospital. Mr. Holden's daughter was still complaining of pain days after the "fall" so, she was finally brought to the hospital. At the hospital, Mr. Holden's daughter was diagnosed with a broken arm. Mr. Holden then received a phone call from his ex, asking that he "verify" what had happened to his daughter. This "fall" had allegedly occurred while Mr. Holden's daughter was with her mother, not with Mr. Holden. This request to help "verify" concerned Mr. Holden and he told his ex-wife that she would need to go through his lawyer. This suggestion infuriated Mr. Holden's ex-wife. Since this incident, Mr. Holden's ex-wife has been doing everything possible to block him from contact with his daughter.

Mr. Holden is concerned that a prolonged custodial sentence will jeopardize his chances at gaining full-custody of his daughter. Since his daughter is his number one priority, Mr. Holden is hoping for a sentence that will allow him to raise his daughter, both physically and financially, as a single father.

/ / /

9

**Conclusion**

Accordingly, Mr. Holden respectfully requests that the Court sentence him to 68 days in custody.

DATED this March 16, 2018

                                        Respectfully submitted,
                                        RENE L. VALLADARES
                                        Federal Public Defender

                                By:  */s/ Rebecca Levy*
                                        REBECCA LEVY
                                        Assistant Federal Public Defender
                                        Attorney for Dustin Holden

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on March 16, 2018, she served an electronic copy of the above and foregoing **DEFENDANT'S SENTENCING MEMORANDUM** by electronic service (ECF) to the person(s) named below:

>DAYLE ELIESON
>United States Attorney
>DANIEL J. COWHIG
>Assistant United States Attorney
>501 Las Vegas Blvd. South, Suite 1100
>Las Vegas, NV 89101

>*/s/ Nancy Vasquez, Legal Assistant*
>Employee of the Federal Public Defender